THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAEIL RO,

    Plaintiff,

v.

EVEREST INDEMNITY INSURANCE COMPANY, a foreign insurance company,

    Defendant.

No.: 2:16-cv-664

EVEREST'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

**NOTE ON MOTION CALENDAR:**

**December 2, 2016**

EVEREST'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL     PAGE 1
NO.: 2:16-CV-664

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

## I. INTRODUCTION AND RELIEF REQUESTED

Plaintiff Daeil Ro brought this action alleging that his request for defense and indemnity under a professional liability insurance policy ("Policy") issued by Everest Indemnity Insurance Company ("Everest") was governed solely by the terms of the Policy and the allegations of the underlying complaint. Now realizing that Everest properly declined his request for coverage based on those documents, and that the plaintiff who brought the underlying complaint agrees with Everest, Ro resorts to demanding extrinsic evidence that is not relevant to whether the Policy covered the claims asserted in the underlying action. However, Everest has already provided Ro with the relevant discovery. The Court should deny Ro's motion.

Ro was required to bring this action pursuant to a loan receipt agreement he and his father, Myung Ro, entered into with Safeco Insurance Company of America. Everest never insured Myung Ro, but Daeil Ro hopes to use this lawsuit to force Everest to pay for his father's liability to the underlying plaintiff, Fumitaka Kawasaki, even though the Ros both testified that the liability for Kawasaki's claims rests solely with Myung Ro.

Kawasaki has confirmed—in both a declaration and deposition testimony—that he did not assert claims in the underlying action for Daeil Ro's activities while he was employed by Ameriprise, the named insured under the Policy. This proves that the claims could not have been covered by the Policy because claims arising before the retroactive date of the Policy are not covered. Discovery to date has shown that Ro was not damaged by Everest's declination of his request for coverage under the Policy because Safeco paid for Ro's defense and funded part of the settlement, the remainder of which will be paid by selling properties bought with Kawasaki's own money.

Regardless, Everest produced the claim file relating to Ro's request for a defense under the Policy and the only written claim-handling procedures applicable to his request. Not satisfied with receiving these documents, Ro now moves to compel production of documents that have no bearing on whether the Policy provided coverage for the claims Kawasaki asserted. Ro

EVEREST'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL  PAGE 2
NO.: 2:16-CV-664

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

is on a fishing expedition and therefore Everest respectfully requests the Court deny his motion.

## II. BACKGROUND FACTS

Fumitaka Kawasaki, the plaintiff in the underlying lawsuit, met Daeil Ro in or around 2001. Declaration of Fumitaka Kawasaki (Kawasaki Decl.) at ¶ 1 (pp. 4 to 6 of Declaration of Daniel R. Bentson in Support of Everest's Opposition to Plaintiff's Motion to Compel ("Bentson Decl.")). Daeil Ro worked at that time for an investment brokerage, Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch"). Kawasaki hired Daeil Ro to manage some of his retirement savings and Daeil Ro later introduced Kawasaki to his father, Myung Ro. *Id.* at p. 1: ¶¶ 2, 3. Because Myung Ro spoke Korean, and Kawasaki spoke English, Daeil Ro—who spoke both languages—translated for his father and Kawasaki. *Id.* at p.1: ¶ 3; Deposition of Daeil Ro ("Daeil Dep") at p. 35:20-21 (pp. 17 of Bentson Decl.). During the introduction, Myung Ro informed Kawasaki about investment opportunities in South Korea. Deposition of Myung Ro ("Myung Dep") at p. 29; 30:1-6 (pp. 74 to 75 of Bentson Decl.).

Myung Ro posed the idea of having Kawasaki invest money with him in South Korea. Myung Dep. at p.29; 30:1-6 (pp. 74 to 75 of Bentson Decl.). In 2002, Kawasaki made an initial investment, transferring $2 million from his Merrill Lynch account into Myung Ro's South Korean bank account. Kawasaki Decl. at p.2: ¶ 4 (pp. 5 of Bentson Decl.). According to Daeil and Myung Ro, Daeil Ro served solely as a translator in this relationship between Myung Ro and Kawasaki. Daeil Dep at p. 38-40; 43:3-4; 44:12-13; 52:4-11; 55:10-15; 70:6-11 (pp. 18-19, 21-22, 26 of Bentson Decl.); Myung Dep at p. 32:13-15; 38:1-6; 40:16-25; 41:1-2; 47:1-18; 51:22-23 (pp. 75, 77, 79-80 of Bentson Decl.). Myung Ro used Kawasaki's money for Myung's Ro's personal expenses, bought two buildings in South Korea, and bought a home in Kent, Washington, in which Myung Ro and his family lived. Myung Dep at p. 39:19-21; 45-46; 47:1-2; 52:20-25; 53:1-18; 56:14-25; 102:15-22; 103:5-9 (pp. 77-81, 93 of Bentson Decl.).

EVEREST'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL   PAGE 3
NO.: 2:16-CV-664

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

**A.     Kawasaki sued Daeil and Myung Ro and Everest declined coverage for Daeil Ro's tender of defense and indemnity.**

In 2015, Kawasaki brought the underlying lawsuit against Daeil and Myung Ro and alleged that the investments in South Korea were a "sham" scheme of "selling away," which involved investments not approved by Merrill Lynch. Kawasaki Complaint at ¶¶ 6-61 (pp. 101 to 115 of Bentson Decl.). Daeil Ro tendered the lawsuit to Everest, which had issued the Policy to Daeil Ro's then-employer, Ameriprise Financial Services, Inc. Letter form Lancer Claims Services to Daeil Ro, dated June 5, 2015 (pp. 124 to 133 of Bentson Decl.). Daeil Ro did not work for Ameriprise at the time of the conduct alleged in Kawasaki's complaint and did not begin working for Ameriprise until 2012, approximately 10 years after Kawasaki gave Myung Ro his money. *Id.*

Everest declined the tender because, among other coverage defenses, the applicable Everest policy plainly barred coverage for Daeil Ro's wrongful "selling away," conduct which was alleged to have taken place more than a decade before he began working at Ameriprise. *Id.* Daeil Ro and Myung Ro also tendered to other insurers who provided different coverage to the Ros and Safeco agreed to defend both of them against Kawasaki's claims. Letter from Safeco Insurance Company to Benjamin Stone, dated July 22, 2015 (pp. 134 to 143 of Bentson Decl.).

**B.     The Ros settled with Kawasaki but Daeil Ro did not fund any part of the settlement with his own money.**

Kawasaki agreed to settle with Daeil and Myung Ro paying $2 million dollars, essentially repaying his initial investment. Funds for the settlement come from three sources: (1) the sale of a home that Myung Ro bought with Kawasaki's money; (2) proceeds from the sale of the South Korean properties Myung Ro bought with Kawasaki's money; and (3) a $400,000 payment from Safeco. Loan Receipt Agreement (pp. 144 to 149 of Bentson Decl.); Daeil Dep at p. 93:13-24; 95:4-7; 101:15-22 (pp. 31 to 33 of Bentson Decl.). Remarkably, Daeil Ro will actually profit from the settlement with Kawasaki. The home, which Myung Ro bought with *Kawasaki's money*, sold for $417,246.72 and the Ros used $300,000 to fund part of the settlement and Daeil

EVEREST'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL     PAGE 4
NO.: 2:16-CV-664

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Ro used the $117,246 profit to pay off a $50,000 home-equity line of credit and to pay for his personal counsel's attorneys' fees. Daeil Dep at p. 53:14-25; 58:6-9; 14-24 (pp. 21, 23 of Bentson Decl.).

C. **Kawasaki agrees that his claims did not involve Ameriprise and Daiel Ro seeks discovery not relevant to this dispute.**

Kawasaki confirmed in a declaration that the claims he asserted in his complaint against Daeil and Myung Ro did not relate to Daeil Ro's employment with Ameriprise. Kawasaki Decl. at ¶ 6. After receiving that declaration, Daeil Ro's counsel took Kawasaki's deposition. Despite all attempts by counsel for Daeil Ro to move Kawasaki off of his declaration, Kawasaki testified that the claims he asserted against Daeil Ro in the underlying action were not related to Ro's work for Ameriprise. Bentson Decl. at ¶ 9. This testimony confirmed, as was evident from the Policy and the underlying complaint, that Everest did not owe Daeil Ro a defense under the Policy. In discovery, Daeil Ro requested a copy of the claim file for his request for coverage under the Policy and the Everest and Lancer claim handling guidelines. Everest and Lancer produced those relevant documents, with a small number of redactions related to reserve information and privileged communications with litigation counsel. Letter from Dan Bentson to Charles Davis; E-mail to Charles Davis (pp. 150 to 157 of Bentson Dec.). Despite having the documents applicable to his request for coverage, Daeil Ro continues to demand documents that have nothing to do with his claim or even the type of claim for which he sought coverage.

### III. ARGUMENT AND AUTHORITY

A. **Everest properly withheld communications protected by the attorney-client privilege and work product doctrine.**

1. **Everest sufficiently established that the attorney-client privilege applies.**

Ro argues that Everest's privilege log does not establish that the attorney-client privilege applies to the redacted communications summarized in claim file entries. But Everest's privilege identifies each redaction, its date, author, subject matter, and the basis for Everest's claim of

EVEREST'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL    PAGE 5
NO.: 2:16-CV-664

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

privilege. Everest has not obligation to describe privileged communications in a manner that would reveal protected information. *See Brosink v. Allied Prop. & Cas. Ins. Co.*, 2010 WL 597489 at * 2 (W.D. Wash. 2010). Accordingly, Everest's privilege log complies with the federal rules. *See* Fed. R. Civ. P. 26(b)(5)(A).

Moreover, Ro ignores the supplemental information Everest provided in the parties' discovery conference and its subsequent confirmation email. In these communications, Everest explained that the redacted claim entries summarized communications with Everest's litigation counsel, which took place after Ro sent the IFCA notice in which he threatened to sue Everest. Thus, prior to filing this motion, Ro understood that the communications involved Everest's litigation counsel in this case and pertained to Everest's defense strategy. Everest has no obligation to provide an even more detailed description of these communications.

**2. Everest's communications with its litigation counsel are protected by the attorney-client privilege.**

Ro next argues that Everest's communications with its litigation counsel are not privileged under *Cedell v. Farmers Ins. Co. of Wash.*, 176 Wn.2d 686, 295 P.3d 239 (2013). In *Cedell*, the insured's home was damaged by fire and the insurer, Farmers, hired an attorney, Ryan Hall, to both assist with Farmers' claim investigation (e.g., examine the insured under oath, respond directly to the insured's claim communications, negotiate with the insured) and provide legal advice to Farmers. *Id.* at 691-92. The insured later sued Farmers for bad faith and moved to compel production of Farmers' communications with its coverage counsel, attorney Hall. *Id.* at 692. The Washington Supreme Court held that the insured was presumptively entitled to Farmers' communications with Hall. *Id.* at 702. To the extent Farmers could demonstrate that the communications with Hall related to his mental impressions or legal advice, however, Farmers was entitled to redact the communications. *Id.* If Farmers established that the attorney-client privilege applied to its communications with Hall, the insured could only attempt to pierce the privilege by proving that Farmers had engaged in bad faith tantamount to civil fraud. *Id.*

*Cedell*'s holding, therefore, applies only to an insurers' communications with its ***coverage counsel*** during the investigation and adjustment of the insured's insurance claim. *Cedell* does not address the privilege applicable to an insurer's communications with its ***litigation counsel*** after the insured threatens to file suit. Ro's attempt to expand *Cedell* to reach such communications is unwarranted.

Even if *Cedell*'s holding applied to Everest's communications with its litigation counsel, the communications redacted by Everest are plainly protected by the attorney-client privilege. The redacted communications took place approximately 10 months ***after*** Everest declined Ro's tender of the underlying action and after Ro's own litigation counsel sent an IFCA notice to Everest threatening to file this lawsuit. Thus, the communications dealt strictly with Everest's litigation strategy in response Ro's IFCA notice and had nothing to do with Everest's investigation or the adjustment of Ro's request for coverage under the Policy.

Ro next argues that, even if the attorney-client privilege protects communications with litigation counsel, his allegation of bad faith negates the privilege and requires Everest to produce attorney-client communications. But "an insured's allegation of bad faith conduct alone, even where sufficiently supported by the record to establish a prima facie case, does not suffice to make out a claim for waiver of the attorney-client privilege based on the civil fraud exception." *MKB Constructors v. Am. Zurich Ins. Co.*, 2014 WL 2526901 at *5 (W.D. Wash. 2014). "Something more than a claim of bad faith is required." *Id.*; *see also Barge v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 6601643 at *4 (W.D. Wash. 2016) ("Something more than an honest disagreement between the insurer and the insured about coverage under the policy must be at play."). Because Ro does no more than allege that Everest incorrectly declined his tender of defense, he has failed to establish that the civil fraud exception to the attorney-client privilege applies. *See Linder v. Great N. Ins. Co.*, 2016 WL 740261 at * 2 (W.D. Wash. 2016) (holding that civil fraud exception did not apply to communications with insurer not engaged in quasi-fiduciary tasks); *see also Cedar Grove Composting Inc. v. Ironshore Specialty Ins. Co.*, 2015

EVEREST'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL   PAGE 7
NO.: 2:16-CV-664

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

WL 9315539 at * 7 (W.D. Wash. 2015).

Ro also relies on *Meier v. Travelers Home & Marine Ins. Co.*, 2016 WL 4447050 at *1 (W.D. Wash. 2016) to argue that an insurer's communications with litigation counsel are not privileged. Ro's reliance on *Meier* is misplaced. In *Meier*, the insurer, Travelers, continued to adjust the insured's claim during the coverage litigation and Travelers' litigation counsel engaged in claim adjustment (or, "quasi-fiduciary") activities while simultaneously defending Travelers in the lawsuit. *Id.* at *1-2. Due to the commingling of claim adjustment and litigation communications, the court overruled Travelers' objection to production its attorney communications. *Id.* at *2.

Unlike *Meier*, there was no adjustment of the claim here by litigation counsel. Moreover, there was no continuing adjustment of Ro's insurance claim and, thus, no commingling of claim adjustment and litigation defense functions. Kawasaki sued Ro in April 2015. Ro tendered the underlying action and Everest correctly declined the tender in June 2015. Everest's communications with its litigation counsel approximately 10 months ***after*** Everest rendered its coverage decision have no connection to the investigation, adjustment, or handling of Ro's request for coverage. The commingling concerns addressed in *Meier* are not present here and Ro's motion to compel should be denied.

### 3. Everest's communications with its litigation counsel are protected by the federal work-product doctrine.

Ro relies on a non-insurance case from outside the Ninth Circuit[1] to argue that the federal work-product doctrine does not protect Everest's communications with its litigation counsel. According to Ro, because state insurance regulations require Everest to maintain claim files as part of its ordinary course of business, work-product protection does not apply. Ro's arguments again miss the mark. In the Ninth Circuit, documents qualify for work-production protection if

---

[1] *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 289 F.R.D. 41 (E.D.N.Y. 2011). *Safeco* involved a dispute in which the surety sought indemnification from the bond principals. Thus, the decision involved a surety bond—not an insurance contract.

they are (1) prepared in anticipation of litigation or trial, and (2) prepared by or for another party or by or for that other party's representative. *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011). Here, the redacted claim file entries summarize communications with Everest's litigation counsel about the appropriate strategy to respond to Ro's threatened lawsuit. Work-product protection applies. *See id.*

Ro once more argues that Everest's privilege log is inadequate to establish work-product protection. But again, Ro fails to acknowledge the subsequent information in which Everest explained that the redacted communications (which occurred after Everest received Plaintiff's IFCA notice) concerned Everest's communications with its litigation counsel and discuss its litigation strategy. Despite his current arguments, Ro is well aware that he is demanding Everest's communications with litigation counsel that contain legal analysis and advice.

Ro also claims that, even if the work-product doctrine applies, he is entitled to disclosure of Everest's opinion work product because, given his bad faith claims, Everest's mental impressions are directly at issue in this case. To obtain this protected material, however, Ro must go beyond the ordinary "substantial need" test. *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992). Ro must instead demonstrate that the mental impressions are at directly at issue in the case and the need for the material is compelling. *Id.* "In federal court, opinion work product is 'virtually undiscoverable.'" *Barge*, 2016 WL 6601643 at *6 (quoting *Republic of Ecuador v. Mackay*, 742 F.3d 860, 869 n. 3 (9th Cir. 2014)).

Ro cannot satisfy this exacting standard. Everest's mental impressions regarding litigation strategy and its strategy about Ro's contractual and extra-contractual claims are ***not*** at issue in this case. The redacted entries summarize communications with litigation counsel concerning Everest's decision to intervene in the underlying action, its response to Ro's IFCA notice, and its decision to seek declaratory relief in the District of Minnesota. Ro's argument confuses Everest's evaluation of his insurance claim with Everest's evaluation of the appropriate legal strategy in this coverage action. The former are not protected and have been produced.

EVEREST'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL   PAGE 9
NO.: 2:16-CV-664

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

The latter are textbook examples of opinion work product, which is not discoverable. The Court should therefore deny Ro's motion to compel. Alternatively, the Court should review the claim entries redacted by Everest to determine whether the attorney-client privilege or work-product doctrine apply.

### B. Everest already produced all applicable claim-handling materials.

All of the applicable claim-handling guidelines used by Lancer to handle Ro's request for defense and indemnity have been produced. Declaration of Lynn Johnson in Support of Everest's Opposition to Plaintiff's Motion to Compel ("Johnson Decl.") at ¶¶ 3-8. Ro nonetheless argues that he is also entitled to all of Everest's claim-handling materials—even those that did not apply and were not used to handle his claim. According to Ro, these claim-handling guidelines may provide evidence that Lancer's action's fell below Everest's own claim-handling standards, which, in turn, would provide evidence that Everest breached its duty of good faith and fair dealing. Ro's argument is baseless as there could be no relevance of Everest's standard to apply if they were not used, considered, provided to, or relied upon by Lancer.

Ro again ignores the actual allegations in this case. Stripped of embellishments, Ro's sole bad faith allegation is that Everest (via Lancer) breached its duty to defend by incorrectly declining Ro's tender of defense in the underlying action. Whether Everest rendered the correct coverage decision is governed solely by the language of the Policy, the underlying complaint, and the applicable law. Indeed, this is precisely what Ro has argued under this "eight corners" analysis. Everest's claim-handling materials for types of insurance and claims that are not at issue in this lawsuit have no bearing on the substance of Ro's bad faith allegation. Inapplicable guidelines used for completely different types of insurance like workers' compensation, property, accident & health, automobile, among others, have no relevance to Ro's claims.

Moreover, an insurer's claim-handling guidelines do not establish or provide evidence of the insurer's standard of care. That standard is governed by the controlling statutes and case law.

At best, an insurer's claim-handling materials may be relevant to determine how an insurer instructed its agents or employees about how to handle similar insurance claims. *Bagley v. Travelers Home & Marine Ins. Co.*, 2016 WL 4494463 at *5 (W.D. Wash. 2016). Here, however, Lancer and Everest have produced the ***only*** claim-handing materials applicable to professional liability claims asserted under the Policy. Johnson Decl. at ¶¶ 3-8. Ro has the written guidelines used by Lancer to handle Ro's claim and any similar claim asserted under the Policy. There is no basis for the production of any additional guidelines, to the extent any exist.

Although Lancer has already produced the only claim-handling materials applicable to Ro's request for coverage under the Policy, Ro argues that non-party Lancer should be required to produce additional claim-handling materials. Ro relies on *Bagley*, which involved a property insurance dispute in which the court found that the specific property insurance materials sought by the insured (e.g., "Property Best Practices" and "The Property Claim Determination Process") might provide evidence of how the insurer trained its adjusters to handle similar insurance claims. *Bagley*, 2016 WL 4494463 at *5. Accordingly, the court ordered the insurer to produce these potentially relevant materials. *Id.*

Lancer has already produced the only claim-handling materials applicable to Ro's request for coverage under the Policy. Claim-handling materials related to different coverages, different policies, or different types of claims would not provide evidence relevant to the claims Ro has asserted against Everest. Ro has failed to articulate how Lancer's handling of entirely different types of insurance claims (e.g., property insurance, workers compensation) could possibly lead to the discovery of admissible evidence in this case. Because Lancer already produced the only applicable guidelines, Ro's request for additional materials is not justified and is an inappropriate fishing expedition.

Additionally, Lancer has been dismissed from this case and is no longer a party. Ro served a subpoena on Lancer, Lancer asserted objections to the subpoena and, although not obligated to do, it produced the documents discussed in this brief. *Pennwalt Corp. v. Durand-*

*Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) (party who has objected to a subpoena need not produce documents unless the serving party obtains a motion to enforce). Ro did not make a Rule 45 motion to enforce that subpoena but instead attempts to use a Rule 26 motion to compel against Everest to obtain the documents that non-party Lancer objected to producing. This procedure is flawed and is another further reason to deny Ro's motion.

### C.  The reserve and underwriting information requested by Ro has no potential relevance to this dispute.

Ro also seeks Everest's underwriting materials and argues that these materials are relevant to determine the risks Everest expected to cover under the Policy. But this lawsuit concerns Everest's obligations under the Policy—not the subjective expectations of Ro or Everest. *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 172, 110 P.3d 733 (2005) (rejecting reasonable expectations doctrine). Moreover, extrinsic evidence is irrelevant to the interpretation of the Policy (that is, whether the Policy potentially provided coverage for the claims asserted by Kawasaki). A court may only consider extrinsic evidence (such as underwriting materials) about the policy's intended coverage when needed to interpret ambiguous policy provisions. *Wash. Pub. Util. Dists' Utils. Sys. v. Pub. Util. Dist. No. 1 of Clallam County*, 112 Wn.2d 1, 17, 771 P.2d 701 (1989). If a policy does not involve mutual negotiations and uses standard forms, there is no extrinsic evidence for a court to consider. *Spratt v. Crusader Ins. Co.*, 109 Wn. App. 944, 949, 37 P.3d 1269 (2002).

Ro has not claimed that any of the Policy's provisions were ambiguous. The underwriting intent of the Policy has no bearing on whether Kawasaki's complaint implicated coverage. Similarly, Ro was not involved in the negotiations of the Policy (issued to Ameriprise) and because the Policy contains standard commercial forms, extrinsic evidence from the underwriting file bears no evidence on its interpretation.

The discovery Ro demands is also inconsistent with his own theory of the case. In his IFCA notice, Ro alleged that Everest was required to look only to the "eight corners" of the

EVEREST'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
NO.: 2:16-CV-664

PAGE 12

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

1 | policy and Kawasaki's complaint. Given Ro's position regarding the use of extrinsic evidence, he cannot consistently assert that the underwriting file contains information relevant to whether Everest had a contractual obligation to defend him.

Ro also fails to acknowledge that there is a split in authority as to whether reserve information is relevant in an insurance coverage dispute involving allegations of bad faith. *See, e.g., Barge*, 2016 WL 6601643 at *6 (acknowledging split in authority); *see also Schreib v. Am. Family Mut. Ins. Co.*, 304 F.R.D. 282, 285 (W.D. Wash. 2014) (same). Washington law requires insurers to set loss reserves and thus "[f]or this reason alone, a reserve cannot accurately or fairly be equated with an admission of liability or the value of any particular claim." *Heights at Issaquah Ridge Owners Ass'n v. Steadfast Ins. Co.*, 2007 WL 4410260 at *3 (W.D. Wash. 2007) (internal quotation marks omitted) (quoting *In re Couch*, 80 B.N.R. 512, 517 (S.D. Cal. 1987)). Moreover, where the insured fails to explain how the insurer's loss reserves are relevant to his insurance claim, courts refuse to compel production of reserve information. *Id.* at *4.

Here, Ro argues only that the adjusters involved with his insurance claim set Everest's loss reserves. He provides no explanation or argument as to how Everest's reserves bear on his claim that the allegations in Kawasaki's complaint required a defense under the Policy. The Court should deny Ro's motion to compel disclosure of Everest's loss reserves.

## IV. CONCLUSION

For these reasons, Everest's respectfully asks the Court to deny Plaintiff's motion to compel.

DATED: November 28, 2016.

**BULLIVANT HOUSER BAILEY PC**

By /s/ Daniel R. Bentson
Daniel R. Bentson, WSBA #36825
E-mail: dan.bentson@bullivant.com

Attorneys for Defendant Everest Indemnity Insurance Company

EVEREST'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL   PAGE 13
NO.: 2:16-CV-664

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

# CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2016, I electronically filled with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the person(s) listed below:

| | |
|---|---|
| Gregory L. Harper<br>Charles K. Davis<br>Thomas M. Williams<br>Harper Hayes PLLC<br>One Union Square<br>600 University Street, Suite 2420<br>Seattle, Washington 98101<br>Telephone: 206.340.8010<br>Email: greg@harperhayes.com<br>        cdavis@harperhayes.com<br>        twilliams@harperhayes.com<br><br>*Attorneys for Plaintiff* | |
| James T. Derrig<br>James T. Derrig Attorney at Law PLLC<br>14419 Greenwood Ave N., Ste. A-372<br>Seattle, WA 98133<br>Telephone: (206) 414-7228<br>Email: jim.derriglaw@me.com<br><br>*Attorneys for Everest Indemnity Insurance Company* | Keith A. Dotseth<br>Shawn M. Raiter<br>Larson & King LLP<br>30 E Seventh St., Ste. 2800<br>Saint Paul, MN 55101<br>Telephone: 651-312-6500<br>Email: kdotseth@larsonking.com<br>Email: sraiter@larsonking.com<br><br>*Attorneys for Everest Indemnity Insurance Company* |

/s/ Genevieve Schmidt
Genevieve Schmidt

4811-4162-0541.1

EVEREST'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL    PAGE 14
NO.: 2:16-CV-664

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930